UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DIONNE LAMONT GATLING, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Case No. 4:23-CV-00079-RWS |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MOVANT'S RESPONSE TO GOVERNMENT'S MOTION TO DISMISS**

Movant Dionne Gatling "Gatling" respectfully opposes Respondents' motion to dismiss. The government filed its motion to dismiss Movant's Motion to Vacate claiming that Movant Gatling knowingly and voluntarily waived his right to bring said motion and that said motion was filed untimely.

**A. The Appeal Waiver Is Unenforceable Following the Change of Law.**

The Government claims that Gatling motion is barred under the postconviction waiver in his plea agreement. Generally, a defendant may waive his appellate rights. See United States v. Andis, 333 F.3d 886, 889 (8th Cir. 2003) (en banc). When the courts review such a waiver, it must determine that the issue raised on appeal falls within the scope of the waiver and the defendant knowingly and voluntarily entered into both the plea agreement and waiver. See United States v. Woods, 346 F.3d 815, 817 (8th Cir. 2003). And even when those conditions are

1

satisfied, "we will not enforce the waiver where to do so would result in a miscarriage of justice." Id. The government bears the burden to show that each of these conditions is met. See United States v. McIntosh, 492 F.3d 956, 959 (8th Cir. 2007) (citing United States v. Aronja-Inda, 422 F.3d 734, 737 (8th Cir. 2005)).

The Government argues that Gatling waived his right to appeal in his plea agreement. We concede that Plea agreements are essentially contracts between the defendant and Government. *Margalli–Olvera v. INS,* 43 F.3d 345, 351 (8th Cir.1994). However, these agreements are subject to special limitations given their unique nature. Significantly, this Court stated in *Margalli–Olvera* that "application of these contract principles is tempered by the constitutional implications of a plea agreement." *Id.* Also important was our statement that "where a plea agreement is ambiguous, the ambiguities are construed against the government." *Id.* at 353. Interpreting plea agreements in this manner reflects the fact that these agreements are normally drafted by the Government and involve significant rights of a defendant. As such, the burden of proof is on the Government to demonstrate that a plea agreement clearly and unambiguously waives a defendant's right to appeal.

In *United States v. Hernandez,* the Second Circuit stated that while waivers of appellate rights are generally valid, these waivers "are to be applied 'narrowly' and construed 'strictly against the Government.'" 242 F.3d 110, 113, 2001.) . The court then concluded that the waiver in *Hernandez* did not prohibit the defendant from

2

challenging the district court's refusal to allow him to withdraw a guilty plea. *Id.* at 114. Plea agreements will be strictly construed and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights. Like 90% of Federal Criminal Defendants, Gatling entered into his guilty plea agreement, with the premises that the agreement was fair and he would receive a reasonable sentence in the District Court.

The <u>Second Circuit</u> held that in determining whether a waiver of appellate rights will be voided or enforced the decisive considerations are the nature of the right at issue and whether the sentence was reached in a manner that the plea agreement did not anticipate. Regarding the nature of the right, a defendant can waive fundamental constitutional and statutory rights.

The Second Circuit noted that the defendant did not actually receive any reduction in prison time for signing the plea deal and waiving his appeal rights. Rather than ruling that the entire plea agreement was unenforceable, the appellate court severed the appeal waiver portion and considered the severity of the defendant's sentence on appeal.

It is, in fact, literally impossible for a defendant (or defense counsel) to know of all possible issues for appeal at the time of a plea agreement. Those agreements are executed in advance of entry of the plea and sometimes far in advance of sentencing; therefore, any errors that may arise in those hearings—or any other post-

agreement proceedings—cannot be anticipated with any certainty when the agreement is made. And the errors that may occur in these proceedings are far from minor or inconsequential: a mistake in assessing a defendant's criminal history could, for example, result in a decades-long increase in the ultimate sentence. To suggest that a defendant facing this outcome somehow should have known that it might occur, or that he or she "knowingly" waived the right to raise the mistake on appeal, strains not only credulity but basic notions of fairness.

Although the Court in Andis, supra, did not provide a precise definition of "miscarriage of justice" it did revisit the discussion subsequently in United States v. Woods,346 F.3d 815, 818 (8th Cir. 2003). There it was contended by Woods that "a miscarriage of justice occurs when a court determines an offense happened without facts to support the finding." The Court, though not having to decide the validity of such a contention based on the facts in that case, did not dismiss the argument.

United States v. Taylor, No. 20-1459 (June 21, 2022 issued a new rule of law on which Gatling relies. Additionally, Taylor has been made retroactive on collateral review, thus allowing Gatling the ability to file the present motion.

Now Mr. Gatling requests that this Court make a finding that the government has failed to meet its burden that his waiver of appellate rights should stand. It is submitted that denying an appeal in such a case would seriously affect the fairness, integrity and the public reputation of judicial proceedings.

# ARGUMENT

**The Court should deny the government's motion to dismiss Mr. Taylor's challenge to his § 924(c) conviction**.

**1. Mr. Gatling's motion is timely.**

The United States Supreme Court in <u>United States v. Taylor,</u> <u>No. 20-1459 (June 21, 2022)</u> held that attempted Hobbs Act robbery does not qualify as a "crime of violence" under §924(c)(3)(A) because no element of the offense requires proof that the defendant used, attempted to use, or threatened to use force.

On January 25, 2023, Mr. Gatling's filed a timely motion under 28 U.S.C. § 2255(f)(3) which provides a limitation period of one-year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review") because the invalidation of § 924(c)(3)(A) unconstitutionally vague would not be a "new rule," but rather the application of Taylor to a particular factual setting.

"[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction becomes final." Teague v. Lane, 489 U.S. 288, 301 (1989) (emphasis in original). "[I]t is axiomatic that a new right cannot be 'initially recognized' when the Court has merely applied its precedent to a particular factual setting." United States v. Hopkins, 268 F.3d 222, 225 (4th Cir.

2001) (quoting Haugh v. Booker, 210 F.3d 1147, 1149 (10th Cir. 2000)). See also Graham v. Collins, 506 U.S. 461, 506 (1993) (Souter, J., dissenting) ("One general rule that has emerged under Teague is that application of existing precedent in a new factual setting will not amount to announcing a new rule.").

In United States v. Taylor, 142 S. Ct. 2022, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A), abrogating this Court's opinion in United States v. St. Hubert, 909 F.3d 335 (11th Cir. 2018). 142 S. Ct. at 2021. To reach that decision, the Supreme Court, once again, endorsed the categorical approach. The Court wrote, "[t]he only relevant question is whether the federal felony at issue always requires the government to prove – beyond a reasonable doubt, as an element of its case – the use, attempted use, or threatened use of force." Id. at 2020. Using the categorical approach to determine if attempted Hobbs Act robbery qualified as a crime of violence, the Court looked to the elements of the offense, not the facts of the individual case. Id. The elements of attempted Hobbs Act robbery require the government to show beyond a reasonable doubt that (1) the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a "substantial step" toward that end. Id. While the Court did not define a "substantial step," the parties agreed that it required more than "mere preparation." It must be "unequivocal" and "significant," though it did not "need to

be violent." Id. The Court wrote, "[t]o know that much is enough to resolve the case." Id. The Court continued,

> Whatever one might say about completed Hobbs Act robbery, attempted Hobbs Act robbery does not satisfy the elements clause. Yes, to secure a conviction the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.

Id. (italics in original). Further, the Court wrote,

> The elements clause does not ask whether the defendant committed a crime of violence or attempted to commit one. It asks whether the defendant did commit a crime of violence – and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force.

Id. at 2022. Finally, the Court wrote, "the government's problem is that no element of attempted Hobbs Act robbery requires the government to prove beyond a reasonable doubt that the defendant used, attempted to use, or even threatened to use force." Id. Because an attempt's substantial step does not require an act of violence, attempted Hobbs Act robbery does not have as an element the use, attempted use, or threatened use of physical force.

In moving to dismiss Mr. Gatling's challenge to his § 924(c) conviction, the government contends that unlike Taylor, Mr. Gatling's 924(c) conviction was predicated on a drug trafficking crime, not a crime of violence. (Doc 840 at 6) Therefore, his conviction is wholly unaffected by Taylor. Id  Under the

7

government's narrow theory, in order for Gatling to bring a successful challenge under 28 U.S.C. §2255, the Supreme Court in Taylor should have specifically held that § 924(c)(1)(A) is unconstitutional. This is because Taylor's application to § 924(c) is not apparent to all reasonable jurists. In Taylor, the U.S. Supreme Court's use of the categorical approach gives direct application to the facts in Gatling's case. Here, Gatling entered a plea of guilty to Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Attempt to Possess with Intent to Distribute Heroin, Attempt to Possess with Intent to Distribute Cocaine, and discharging a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 924(c)(1)(A)(iii). The allegations that support the charge and guilty plea of Discharging a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death was that on about April 5, 2010, Gatlng ordered the murder of Theodis Howard for cooperating against his brother Deron Gatling during the years of 2004-2006, whereby both Deron Gatling and Theodis Howard were charged under Docket No. 4:04-CR00517 CAS. (See Doc. 750 at 18) Additionally, on May 2, 2013, Gatling was alleged to "encourage" co-defendant Andre Rush to shoot and kill Terrace Morgan. Id at 10. Accordingly, Rush told investigator that Gatling told him "to get him out of the way" and Rush's interpretation of the alleged statement is that Gatling wanted him to kill Morgan. Id at 10. Under the categorical approach, the

8

alleged discharging of a firearm in "furtherance" of A Drug Trafficking Crime did not occur in the Gatling case. The murder of Morgan occurred because of Morgan's alleged past cooperation with the government regarding Gatling's brother, Deron Gatling. Clearly, Morgan's murder did not further Movant Gatling's drug trafficking. Likewise, the murder of Howard occurred because of Gatling's allegedly unclear statement to co-defendant Rush where he was alleged to have stated, "get him out the way." Unfortunately, Rush misinterpretation of the alleged statement caused him to unilaterally kill Howard. This unilateral decision had no bearing or connection to the drug trafficking of Gatling.

Like Taylor, Gatling is asking this Court to take a categorical approach and asked the Government similar parallel questions. In Taylor, the Supreme Court asked the Government whether there was a completed Hobbs Act robbery, attempted Hobbs Act robbery which did not satisfy the elements clause. The Court declared to the Government that in order for the government to secure a conviction, it must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property. Similarly, this Court should asked the Government:

1. Did Gatling own or possess a firearm?

2. Did Gatling's further his drug trafficking crime through the murders of Howard and Morgan?

3. Did Gatling specifically tell Rush to kill Morgan?

4. Could Rush have misinterpreted Gatling's alleged statement?

5. Did the Government have any additional support for charge of 924© besides the self-serving statement of perpetrator and co-operator Rush? The clear answers to the question above provides this court with the same insight used by the Supreme Court in Taylor and places the burden on the Government to prove that Gatling took a substantial step in employing the use of a gun in furtherance of his drug trafficking and the records shows there was no step taken by Gatling.

## **CONCLUSION**

For the reasons stated above, Mr. Gatling respectfully requests that the Court deny the government's motion to dismiss his challenge to his § 924(c) conviction.

Respectfully submitted,

Dated: June 9, 2023      /s/ Jermaine Wooten_____
Attorney for Appellant
Jermaine Wooten
10250 Halls Ferry Road
St. Louis, MO 63136
314-736-5770 telephone
314-736-5772 facsimile
jwooten@lsgstl.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on June 9, 2023I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by this Court's CM/ECF system.

Dated: June 9, 2023      /s/ Jermaine Wooten
Attorney for Movant